# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE APPLICATION OF HELIOS VENTURES FZE FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 21-MC _____ |

# MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S EX PARTE APPLICATION AND PETITION FOR AN ORDER TO CONDUCT DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

I.    FACTUAL BACKGROUND ............................................................................2

    A.    The Parties and Relevant Third-Parties .............................................2

    B.    Subscription And Option Agreements .................................................5

    C.    Petitioner Exercises The Put Option But Mr. Flohr Fails To Comply With His Obligations Under The Put Option Agreement ...................................6

    D.    Petitioner Exercises The Call Option But Mr. Flohr Fails To Comply With His Obligations Under The Call Option Agreement ..............................8

    E.    Mr. Flohr And VistaJet Group Holding Limited Took Further Actions In Malta And Dubai That Are Detrimental To Petitioners' Interests .........9

    F.    Petitioner's Contemplated Proceedings .............................................12

    G.    Respondents Are Likely To Possess Highly Material Information For Use In The Contemplated Foreign Proceedings .........................................13

II.    ARGUMENT ...............................................................................................14

    A.    Legal Framework ...............................................................................14

    B.    Petitioner Satisfies The Statutory Requirements Of 28 U.S.C. § 1782. ...............16

        1.    Respondents Are "Found" In The Southern District Of New York. .........16

        2.    The Discovery Sought Is For Use In Foreign Proceedings .....................17

        3.    Petitioner Is An "Interested Person." ...............................................19

    C.    All Of The *Intel* Discretionary Factors Of Section 1782 Weigh In Favor Of Permitting The Discovery Petitioner Seeks. .................................20

        1.    The First *Intel* Factor Favors Granting Discovery. ................................20

        2.    The Second *Intel* Factor Favors Granting Discovery. ...............................20

        3.    The Third *Intel* Factor Favors Granting Discovery. .................................21

        4.    The Fourth *Intel* Factor Favors Granting Discovery ...............................22

III.    CONCLUSION ............................................................................................23

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

### <u>Cases</u>

*Australia & New Zealand Banking Grp. Ltd. v. APR Energy Holding Ltd.*,
   No. 17-MC-00216(VEC), 2017 WL 3841874 (S.D.N.Y. Sept. 1, 2017) .............................. 17

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012).................................................................................... 15, 16, 19, 22

*Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*,
   613 F. App'x 319 (5th Cir. 2015) ........................................................................................ 19

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*,
   798 F.3d 113 (2d Cir. 2015)................................................................................................ 20

*Daimler AG v. Bauman*,
   571 U.S. 117, 139 n. 19 (2014)........................................................................................... 17

*Euromepa, S.A. v. R. Esmerian, Inc.*,
   51 F.3d 1095 (2d Cir. 1995)........................................................................................... 16, 21

*Hertz Corp. v. Friend*,
   559 U.S. 77, 93 (2010).......................................................................................................... 17

*In re Accent Delight Int'l Ltd.*,
   869 F.3d 121 (2d Cir. 2017)................................................................................................. 19

*In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*,
   121 F.3d 77 (2d Cir. 1997)............................................................................................. 16, 22

*In re Application of Bracha Found.*,
   663 F. App'x 755 (11th Cir. 2016) ...................................................................................... 18

*In re Application of OOO Promnesfstroy*,
   No. M 19-99(RJS), 2009 WL 3335608 (S.D.N.Y. Oct 15, 2009) ........................................ 21

*In re Bayer AG*,
   146 F.3d 188 (3d Cir. 1998)........................................................................................... 15, 23

*In re Catalyst Managerial Servs., DMCC*,
   680 F. App'x 37 (2d Cir. 2017) ........................................................................................... 19

*In re Edelman*,
   295 F.3d 171 (2d Cir. 2002)................................................................................................. 16

*In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings*,
No. 15-MC-417 (LAK), 2016 WL 702327 (S.D.N.Y. Feb. 18, 2016) .................................. 15

*In re Furstenberg Fin. SAS*,
No. 18-MC-44(JGK), 2018 WL 3392882 (S.D.N.Y. July 12, 2018) ............................. 18, 19

*In re Gianoli Aldunate*,
3 F.3d 54 (2d Cir. 1993) ......................................................................................... 15

*In re Gushlak*,
No. 11-MC-218 NGG, 2012 WL 1514824 (E.D.N.Y. Apr. 30, 2012) .................................. 15

*In re Hornbeam Corp.*,
722 F. App'x 7 (2d Cir. 2018) ................................................................................. 18

*In re Kiobel*,
2017 WL 354183 (S.D.N.Y. Jan 24, 2017) ......................................................... 18

*In re Mangouras*,
No. 17-MC-172, 2017 WL 4990655 (S.D.N.Y. Oct. 30, 2017) ............................. 17

*In re Top Matrix Holdings Ltd.*,
No. 18 MISC. 465(ER), 2020 WL 248716 (S.D.N.Y. Jan. 16, 2020) .................................. 18

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S. 241 (2004) ........................................................ 2, 14, 16, 17, 20, 21, 22, 23

*Inv. Vehicles v. KPMG, L.L.P.*,
798 F.3d 113 (2d Cir. 2015) .................................................................................. 20

*La Suisse, Societe d'Assurances Sur La Vie v. Kraus*,
62 F. Supp. 3d 358 (S.D.N.Y. 2014) .................................................................. 19

*Matter of Fornaciari for Order to Take Discovery Pursuant to 28 U.S.C. §1782*,
No. 17MC521, 2018 WL 679884 (S.D.N.Y. Jan. 29, 2018) ................................. 17

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015) .................................................................................. 17

*Minatec Fin. S.A.R.L. v. SI Group Inc.*,
2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ..................................................... 23

**<u>Statutory Authorities</u>**

28 U.S.C. § 1782...................................................................................................................... 15

Helios Ventures FZE ("Petitioner") respectfully submits this Memorandum of Law in support of its Application and Petition pursuant to 28 U.S.C. § 1782 ("Section 1782"), for an order authorizing it to obtain limited discovery from VistaJet US Inc. ("VistaJet US"), Rhône Capital L.L.C. and  Rhône Group L.L.C. (collectively, the "Rhône Group", and together with VistaJet US, "Respondents"), in the form of the attached subpoenas *duces tecum* and *ad testificandum* (the "Subpoenas") (the "Application").[1]

## PRELIMINARY STATEMENT

This Application arises from foreign disputes in England and Malta relating to the Petitioner's (a) shareholding in an aviation services company called VistaJet Group Holding Limited ("VistaJet Malta"), a company founded and led by Mr. Thomas Flohr and incorporated in Malta, and (b) lending by Petitioner to Mr. Flohr, who has since failed to abide by his obligations under certain agreements granting the Petitioner with numerous rights, including call and put options.  Presumably under the direction of Mr. Flohr and others, VistaJet Malta has also undertaken a series of corporate actions that harmed Petitioner's interests in the company.  The Respondents are highly likely to possess information relating to the foreign disputes because they were involved in the actions and transactions that are at issue in those disputes.  Accordingly, the Petitioner brings this Application to obtain that information for use in contemplated civil proceedings in both England and Malta against Mr. Flohr, VistaJet Malta and others ("Contemplated Foreign Proceedings").

Specifically, the contemplated English proceedings seek redress for Mr. Flohr's breaches of put and call option agreements pursuant to which Petitioner advanced over $60 million to Mr.

---

[1]  The Subpoenas are attached as Exhibit 2 to the Declaration of Lucas Bento, dated May  5, 2021 ("Bento Decl.").

Flohr to help grow VistaJet Malta's business in the United States.  The contemplated Maltese proceedings concern VistaJet Malta and its board of directors passing resolutions highly detrimental to Petitioner's rights as a shareholder of VistaJet Malta, including for example the diversion of opportunities to a separate company ultimately controlled by Mr. Flohr and others, in violation of Maltese company law.

This Application meets all of the requirements of Section 1782.  Respondents "reside" and are "found" in this district because they are headquartered here.  The discovery sought by the Petitioner is highly material and relevant to the issues at stake in the Contemplated Foreign Proceedings.  Moreover, each of the discretionary factors laid down by the Supreme Court in *Intel Corp. v Advanced Micro Devices, Inc.,* 542 U.S. 241 (2004) favor granting the discovery sought by Petitioner.  Accordingly, the Petitioner respectfully requests that the Court grant Petitioner's Application and permit Petitioner to serve the Subpoenas on Respondents.

## I.    FACTUAL BACKGROUND

### A.    The Parties and Relevant Third-Parties

***Helios Ventures FZE (Petitioner).***  Helios Ventures FZE ("Helios") is a Free Zone Establishment (the equivalent of a limited liability company limited by shares) registered in the Free Zone in Ajman in the United Arab Emirates.[2]  Helios is a holding company.[3]  The beneficial owner of Helios is Mr. Loucas (*defined infra*), a Cypriot businessman.[4]  Its director is Mr. Siyuan Wang.[5]

---

[2]  Declaration Advocate Doctor Louis Cassar Pullicino ("Pullicino Decl.") at ¶7; *see also* Declaration of James Drake QC ("Drake Decl."), at ¶7.
[3]  Pullicino Decl., ¶7.
[4]  *Id.*
[5]  *Id.*

**VistaJet US Inc. (Respondent).**  VistaJet US Inc. ("VistaJet US") is the US subsidiary of Vista Dubai (*defined infra*).  VistaJet US is incorporated in Delaware and headquartered in New York, New York.[6]  Its President, Ms. Leona Qi, is based in New York and formerly held the position of President Asia of VistaJet International Ltd. (an entity incorporated in Hong Kong in 2017 and a subsidiary of VistaJet Malta).  Ms. Qi was involved in the Rhône Transactions (*defined infra*) and acted as the key contact in the relationship between Petitioner and VistaJet Malta (*defined infra*).[7]

**Rhône Capital L.L.C. and  Rhône Group L.L.C. (Respondents).** Rhône Capital L.L.C. and  Rhône Group L.L.C. (collectively, the "Rhône Group") is a private equity group.  Rhône Group is incorporated in Delaware and headquartered in New York, New York.[8]  Rhône Group was a shareholder of redeemable preference shares in VistaJet Malta between August 24, 2017 and December 6, 2018, and a minority shareholder in "Ordinary A Shares"[9] in VistaJet Malta for one day on December 6, 2018.[10]  Upon information and belief, Rhône Group is a shareholder in Vista Dubai (*defined infra*).  Steven Langman is a co-founder and managing director of Rhône Group.[11]

**VistaJet Group Holding Limited (Non-Party).** VistaJet Group Holding Limited ("VistaJet Malta") is a company incorporated in Malta.[12]  Upon information and belief, VistaJet Malta was the global holding company of the "VistaJet" branded group of companies until December 6,

---

[6]  Bento Decl., Exs. 3-5.
[7]  Pullicino Decl. ¶11.
[8]  Bento Decl., Exs. 6-9.
[9]  "Ordinary A Shares" carry substantially the rights to receive information on VistaJet Malta, participate and vote in shareholder meetings, pledge shares, receive dividends and distribution of assets on winding-up on a *pro rata* basis; Pullicino Decl., ¶8, n. 1.
[10]  Pullicino Decl., ¶37.
[11]  Pullicino Decl., ¶38.
[12]  Pullicino Decl., ¶8.

2018.[13]  Mr. Flohr is the founder and CEO of VistaJet Malta and he holds indirectly (through Vista Dubai) the majority of its shares.[14]  Helios is a shareholder of "Ordinary B Shares"[15] in VistaJet Malta.[16]  Mr. Flohr is also a director at VistaJet Malta.  Mr. Langman was a director at VistaJet Malta from August 24, 2017 until December 6, 2018.

***Vista Global Holding Limited (Non-Party)***.  Vista Global Holding Limited ("Vista Dubai") is a company incorporated in Dubai, United Arab Emirates, on August 28, 2018.[17]  Upon information and belief, Vista Dubai became the global holding company of the "VistaJet" branded group of companies on December 6, 2018.  Upon information and belief, Mr. Flohr and Rhône Group hold a majority stake in Vista Dubai.  Mr. Flohr and Mr. Langman are directors of Vista Dubai.[18]

***Thomas Flohr (Non-Party).***  Thomas Flohr is the founder of VistaJet Malta and was a majority shareholder of "Ordinary A Shares" in the company until November 6, 2018.[19]  Upon information and belief, he is currently the majority shareholder of Vista Dubai, the majority shareholder of VistaJet Malta, and therefore continues to control VistaJet Malta indirectly.[20]  Mr. Flohr is a director of VistaJet Malta and of Vista Dubai.[21]

---

[13]  Pullicino Decl., ¶9.
[14]  Pullicino Decl., ¶8.
[15]  "Ordinary B Shares" carry substantially the rights to receive information on VistaJet Malta, participate in shareholder meetings, receive dividends and distribution of assets on winding-up on a *pro rata* basis; Pullicino Decl. ¶8 n. 1.
[16]  Pullicino Decl., ¶8.
[17]  Pullicino Decl., ¶9.
[18]  Pullicino Decl., ¶8.
[19]  Pullicino Decl., 8.  On November 6, 2018,  Mr. Flohr's direct shareholding in VistaJet Malta was transferred to TF Holding Ltd. (a company registered in Dubai and entirely held by Mr. Flohr) and on the same day was further transferred by TF Holding Ltd. to Vista Dubai.  *Id.*
[20]  Pullicino Decl., ¶9.
[21]  Pullicino Decl., ¶9.

*Leonidas Loucas (**Non-Party**).*  Leonidas Loucas is a Cypriot business man and the ultimate beneficial owner of Helios.[22]  Helios is a shareholder of Ordinary B Shares in VistaJet Malta.[23]

### B.    Subscription And Option Agreements

Founded in 2004 in Switzerland and relocated to Malta in 2016,[24] VistaJet Malta operates a private fleet of over 70 aircraft around the world.[25]  VistaJet Malta clients can use VistaJet Malta's aviation services while paying only for hours flown.[26]  To date, VistaJet Malta passengers have flown to over 1,900 airports in 96% of the world's countries.[27]

In 2016, in an effort to raise capital to fund the company's international expansion, Mr. Flohr approached Mr. Loucas to discuss the provision of capital to VistaJet Malta.[28]  Mr. Flohr highlighted that VistaJet Malta was looking into further developing its business and expanding its activities in the US market.  Mr. Flohr and Mr. Loucas subsequently held discussions which led to:

1.  a subscription agreement between Helios and VistaJet Malta dated February 6, 2017 as amended on March 29, 2017 ("Subscription Agreement");

2.  a put option agreement between Helios and Mr. Flohr dated February 6, 2017 as amended on March 29, 2017 for the shares under the Subscription Agreement ("Put Option Agreement").

---

[22] Pullicino Decl., ¶7.
[23] Pullicino Decl., ¶8.
[24] Bento Decl., Ex. 3.
[25] Bento Decl., Ex. 3.
[26] Bento Decl., Ex. 3.
[27] Bento Decl., Ex. 3.
[28] Drake Decl., ¶9.

In or around June 2017, Mr. Flohr and Petitioner discussed additional options to provide financing for the further development of VistaJet Malta.  This led to a call option agreement between Helios and Mr. Flohr dated June 28, 2017 ("Call Option Agreement", and together with the Subscription Agreement and Put Option Agreement, the "Helios Agreements").[29]

The Helios Agreements granted the Petitioner numerous rights and imposed a number of obligations on Mr. Flohr, as described more fully below.

**C.     Petitioner Exercises The Put Option But Mr. Flohr Fails To Comply With His Obligations Under The Put Option Agreement**

In the Put Option Agreement, Mr. Flohr granted the Petitioner a "First Option" and "Second Option" (collectively, "Put Options"), which, upon valid exercise by Helios, would require Mr. Flohr to purchase from the Petitioner specified amounts of "Ordinary B Shares" in the capital of VistaJet Malta on the terms and subject to the conditions set out in the Put Option Agreement.[30]  The Put Option Agreement further provides: (i) the consideration to be paid by Mr. Flohr for the shares subject to the Put Options (US$26,000,000 for the First Option Shares and US$13,000,000 for the Second Option Shares); and (ii) the period during which the Petitioner would be entitled to serve "Exercise Notices" of the First Option and Second Option, as well as the dates by which payments for the shares would be completed.[31]

On December 14, 2017, the Petitioner served notices for the First Option and the Second Option under the Put Option Agreement notifying Mr. Flohr of its exercise of the Put Options ("Put Notices").[32]  The next day, Mr. Flohr replied by a "Purchaser Notice" ("Purchaser Notice")

---

[29] Drake Decl., ¶10.
[30] Drake Decl., ¶11 & Ex. 3 (Put Option Agreement), at clauses 2.1 and 2.2.
[31] Drake Decl., ¶11 & Ex. 3 .
[32] Drake Decl., ¶12.

stating that the Petitioner's notices were served earlier than permitted under the Put Option Agreement, but confirmed that "notwithstanding early option exercise . . . the First Option Trigger date is 06 February 2020 plus the First Option Completion Date ending 05 February 2021 . . . the Second Option Trigger Date is 30 March 2020 plus the Second Option Completion Date ending 29 March 2021."[33]

With the option completion dates for the Put Notices approaching on February 5, 2021 and March 29, 2021, respectively, the Petitioner wrote to Mr. Flohr on January 29, 2021 requesting payment in accordance with the Put Option Agreement on the respective option completion dates and provided its account details for payment.[34]  However, on February 4, 2021, Mr. Flohr's English counsel wrote to Petitioner, noting, in summary, that Mr. Flohr had "not accepted" Petitioner's notices of December 14, 2017 and that Mr. Flohr's Purchaser Notice of December 15, 2017 was a "counter-offer to Helios to the effect that he was prepared to accept an early triggering of the options in December 2017 . . . and subject to contract."  Mr. Flohr's counsel asserted that this "counter-offer was not accepted by Helios" and had purportedly "expired".[35]

Mr. Flohr now refuses to pay in accordance with his obligations under the Put Option Agreement in exchange for the corresponding shares.[36]  Mr. Flohr disputes, inter alia, the proper construction of the Put Option Agreement and the effect of his communications to Petitioner, including (among other issues) whether he is estopped from asserting that Petitioner' notices were served ahead of the time permitted under the Put Option Agreement.[37]  The dispute about the facts,

---

[33] Drake Decl., ¶12.
[34] Drake Decl., ¶13 & Ex. 8.
[35] Drake Decl., ¶14 & Ex. 9.
[36] *Id.*, ¶¶14-15
[37] Drake Decl., ¶15.

nature, and circumstances related to the exercise of the Put Option Agreement will be the subject of the contemplated English proceedings.[38]

### D.     Petitioner Exercises The Call Option But Mr. Flohr Fails To Comply With His Obligations Under The Call Option Agreement

Following the above-described transactions in February and March 2017, Mr. Flohr approached Mr. Loucas again in June 2017 which culminated in the Call Option Agreement between Petitioner and Mr. Flohr.  Pursuant to the Call Option Agreement, the Petitioner loaned US$30 million to Mr. Flohr which was either to be: (a) repaid after December 31, 2017 together with a Guaranteed Return of US$6,000,000 and specified Interest ("Convertible Equity"); or (b) under certain conditions and circumstances, converted into a certain number of Ordinary A Shares in the capital of VistaJet Malta dependent upon a valuation of VistaJet Malta, the basis for which was set out in the Call Option Agreement ("Call Option").[39]

The circumstances and conditions that would result in the Call Option being exercised are set out in clauses 3.1 to 3.3 of the Call Option Agreement.[40]  In summary, (i) clause 3.1 provides for "Mandatory Conversion" where a "Conversion Trigger" occurred after August 16, 2017 and prior to December 31, 2017 (if the Convertible Equity has not been repaid); (ii) clause 3.2 provides that if no Conversion Trigger occurred, then the Convertible Equity may be converted based on a mutually agreed valuation of VistaJet Malta after a good faith negotiation between Mr. Flohr and the Petitioner; or (iii) clause 3.3 provides that if there was no conversion on the basis of the

---

[38] Drake Decl., ¶¶20-22.
[39] Drake Decl., ¶16.
[40] Drake Decl., ¶17.

foregoing, the Petitioner may, "at its sole discretion", exercise the Call Option on the basis of a "Per Share Price" based on the valuation of VistaJet Malta of US$1.25 billion.[41]

In August 2017, one of the Respondents, Rhône Group received US$150 million in redeemable preference shares of VistaJet Malta and obtained from Mr. Flohr shares in VistaJet Malta of the same type for US$50 million based on an agreed valuation ("Rhône Transactions").[42]

On December 26, 2017, and in response to a communication from the Petitioner on December 22, 2017, Mr. Tobias Schramm (General Counsel of VistaJet Malta) emailed the Petitioner, alleging that Mandatory Conversion had already occurred on August 24, 2017, purportedly as a result of the Rhône Transactions.[43]

Mr. Flohr and the Petitioner dispute whether the Rhône Transactions constituted a "Conversion Trigger" under the Call Option Agreement.[44]   This dispute about the facts, nature and circumstances of the Rhône Transactions and how it impacts Mr. Flohr and the Petitioner's rights under the Call Option Agreement will be the subject of the contemplated English proceedings.[45]

E.     **Mr. Flohr And VistaJet Group Holding Limited Took Further Actions In Malta And Dubai That Are Detrimental To Petitioners' Interests**

In addition to foregoing issues, between August 2017 and December 2018, Mr. Flohr caused VistaJet Malta and its affiliates to take a series of actions that are detrimental to Petitioner's interests and in violation of Maltese law,[46] including:

---

[41] Drake Decl., ¶17.
[42] Pullicino Decl., ¶14.
[43] Drake Decl., ¶19.
[44] *See* Drake Decl. ¶18 & Ex. 2 (defining Conversion Trigger "an investment of at least US$200,000,000.00 by a third party in the shares of the Company.").
[45] Drake Decl., ¶¶20-22.
[46] Pullicino Decl., ¶13.

- ***Rhône Transactions Resolution Taken Without Petitioner's Consent***: On August 23, 2017, as a result of the Rhône Transactions, VistaJet Malta passed an Extraordinary Resolution authorizing an increase in the company's share capital, adopting a new Memorandum of Association and Articles of Association, and amending the Shareholders' Agreement ("Rhône Transactions Resolution").  The Rhône Transactions Resolution was passed without the consent of Petitioner in violation of Maltese law.[47]

- ***Bonus Share Issue Resolution Passed in Violation of Maltese Law***: On August 24, 2017, VistaJet Malta adopted an Extraordinary Resolution providing for (1) a bonus issuance to Mr. Flohr, (2) a share buyback of Ordinary A Shares in VistaJet Malta owned by Mr. Flohr applying a valuation established by the Rhône Transaction, (3) the conversion of Ordinary A Shares in VistaJet Malta owned by Mr. Flohr to deferred shares, and (4) the issuance and allotment of redeemable preference shares to the Rhône-controlled Turbo Entities ("Bonus Share Issue and Allotment Resolutions").  These resolutions were passed in violation of Maltese law.[48]

- ***October 16, 2018 Resolutions Passed Without Notice to Petitioner***: On October 16, 2018, VistaJet Malta passed resolutions seeking to increase the share capital of the company, to amend the Articles of Association, and to empower the board of directors to issue Ordinary A Shares up to an authorised amount ("October 16, 2018

---

[47] Pullicino Decl., ¶¶14-20.
[48] Pullicino Decl., ¶¶21-25.

Resolutions") without providing adequate notice to Petitioner as a holder of Ordinary B-Shares.  These resolutions were passed in violation of Maltese law.[49]

- ***Contrary to VistaJet Malta's Articles of Association, the December 6, 2018 Redemption of Preference Shares Was A "Conversion" And Thus Not Authorized In The Manner It Was Carried Out Under Maltese Law***: On December 6, 2018, the Turbo Entities sought to redeem their Redeemable Preference Shares ("Redemption of Preference Shares Transaction") in violation of Maltese law.[50]  On the same day the Turbo Entities were allotted Ordinary A Shares based on the powers granted by the October 16, 2018 Resolutions, which they subsequently transferred to Vista Dubai.  This transfer occurred without notice to the Petitioner.[51]

- ***Diversion of XOJet Acquisition Opportunity:*** On December 6, 2018, Mr. Flohr and two Rhône Group-controlled entities called Turbo Holdings LP and Turbo Offshore Holdings LP ("Turbo Entities")[52] transferred their entire shareholding of Ordinary A Shares in VistaJet Malta to Vista Dubai through a series of corporate transactions.  Consequently, on December 6, 2018, Vista Dubai became the majority shareholder of VistaJet Malta and Mr. Langman, Managing Director and Founder of Rhône Group, left the board of directors of VistaJet Malta and became a director at Vista Dubai.  Shortly before this restructuring, Vista Dubai acquired a

---

[49] Pullicino Decl., ¶¶26-29.
[50] Pullicino Decl., ¶¶30-33.
[51] Pullicino Decl., ¶¶37, 46.
[52] The entities names are Turbo Holdings LP and Turbo Offshore Holdings LP.  *See* Pullicino Decl. at ¶21(d).

stake in XOJet—a U.S. jet charter company—without offering Petitioner a chance to acquire shares in Vista Dubai, and indeed without notice to Petitioner of the acquisition transaction ("XOJet Acquisition Transaction"), contrary to Maltese law.[53]

### F.    Petitioner's Contemplated Proceedings

Petitioner has suffered significant harm as a result of Mr. Flohr's deliberate breaches of the Helios Agreements and the corporate transactions that prejudiced the Petitioner's rights as a holder of Ordinary B Shares of  VistaJet Malta.  Accordingly, Petitioner contemplates initiating civil proceedings against Mr. Flohr in England and Malta as more fully detailed below ("Contemplated Foreign Proceedings").[54]

*Contemplated English Proceedings*.  Petitioner seeks to initiate proceedings in England against Mr. Flohr for, *inter alia*, breach of contract, including of the Helios Agreements.  The Petitioner intends to seek, *inter alia,* declaratory relief, specific performance, damages, interest, and costs ("Contemplated English Proceedings").[55]  To this end, Petitioner has retained English counsel to pursue these claims, who have already sent court-mandated pre-action correspondence to the foreign defendants and begun preparing pleadings.[56]

*Contemplated Maltese Proceedings.* Petitioner seeks to initiate proceedings in Malta against VistaJet Malta, its directors (namely Mr. Flohr, Mr. Langman, and Nicholas van der Meer) and Vista Dubai, ("Maltese Claim Defendants) for, inter alia, unfair prejudice claims under article

---

[53] Pullicino Decl. ¶¶34-46.
[54] Drake Decl., ¶¶20-27 & Ex. 4; Pullicino Decl. ¶¶47-51.
[55] Drake Decl., ¶22.
[56] Drake Decl., ¶21 & Ex. 4.

402(1) of the Maltese Companies Act ("Contemplated Maltese Proceedings").[57] These claims shall focus on the unlawful character of the XOJet Acquisition Transaction, Rhône Transactions Resolution, Bonus Share Issue And Allotment Resolution, October 16, 2018 Resolutions, and Redemption of Preference Shares Transaction. To this end, Petitioner has retained Maltese counsel to pursue these civil claims in Malta and to seek, inter alia, compensatory relief relating thereto.[58] Maltese counsel has begun preparing pleadings to pursue these claims.[59]

G.   **Respondents Are Likely To Possess Highly Material Information For Use In The Contemplated Foreign Proceedings**

The Petitioner seeks information from Respondents relating to, inter alia, the Helios Agreements and the aforementioned corporate transactions as detailed in the Proposed Subpoenas.[60]

Respondent VistaJet US is likely to possess relevant information about VistaJet Malta's business operations and plans in the US, which the Petitioner claims were, *inter alia*, the basis of the Helios Agreements. Furthermore, Ms. Qi, as VistaJet US's President, was directly involved in the negotiations of the Helios Agreements and the Rhône Transactions.[61]

Respondent Rhône Group likely possesses relevant information regarding, inter alia, the rationale for and the commercial nature of the Rhône Transactions, the valuation of VistaJet Malta, the overall structure of the Rhône Transactions, including the plans for the use of funds, subsequent restructurings of the VistaJet group of companies and Mr. Flohr's purported representations

---

[57] Pullicino Decl., ¶¶47-51.
[58] Pullicino Decl., ¶¶49-51.
[59] Pullicino Decl., ¶51.
[60] *See* Bento Decl., Ex. 2 (Proposed Subpoenas).
[61] Pullicino Decl., ¶11.

regarding the effect of the Rhône Transactions on the rights and obligations of Helios and Mr. Flohr, including under the Call Option Agreement.

The Respondents, including their employees, are therefore likely in possession and control of information highly material to the Contemplated Foreign Proceedings.  This is further explained in the Pullicino and Drake Declarations, including Appendix A to the Pullicino Declaration which illustrates how each request is relevant to the foreign proceedings.[62]

## II.    ARGUMENT

### A.    Legal Framework

Section 1782 of Title 28 of the United States Code ("Section 1782") permits United States District Courts to grant discovery for use in a pending or "reasonabl[y] contemplat[ed]" foreign proceeding.  *Intel*, 542 U.S. at 259.  The statute, in relevant part, states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person.

> 28 U.S.C. § 1782.

Applications under section 1782 are routinely decided by this Court on an *ex parte* basis.[63] Such applications are granted based on "modest prima facie elements" in order to effectuate "Congress's goal of providing equitable and efficacious discovery procedures." *In re Bayer AG*,

---

[62] Pullicino Decl., ¶¶60-61 & App'x A; Drake Decl. ¶¶30-31.

[63] *See In re Gushlak*, No. 11-MC-218 NGG, 2012 WL 1514824, at *3 n.4 (E.D.N.Y. Apr. 30, 2012) (citing several cases, including from this district, and noting that "courts routinely grant § 1782 applications ex parte, limiting respondents' challenges to after the subpoena is served"); *In re Ex Parte Application of Porsche Automobil Holding SE for an Order Pursuant to 28 U.S.C. §1782 Granting Leave to Obtain Discovery for Use in Foreign Proceedings*, No. 15-MC-417 (LAK), 2016 WL 702327, at *1 n.3 (S.D.N.Y. Feb. 18, 2016) ("As typically or, at least, frequently is the case in § 1782 proceedings, leave to serve the subpoenas was granted ex parte, which is appropriate because all questions with respect to the propriety of the grant of leave and with respect to the content to the subpoenas are available to every subpoenaed party via a motion to quash or the defense of an application to compel compliance with the subpoenas.").

146 F.3d 188, 195 (3d Cir. 1998); *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) ("[T]he statute has, over the years, been given 'increasingly broad applicability.'" (citing *In re Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993)).

An application made pursuant to Section 1782 must satisfy three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person." *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

After determining that the three statutory requirements are satisfied, courts must then consider four discretionary factors in deciding whether to grant a Section 1782 application: (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoenas contain unduly intrusive or burdensome requests. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004).

Moreover, courts in this circuit "evaluate discovery requests under section 1782 in light of the statute's twin aims of providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar

means of assistance to our courts." *Euromepa S.A. v. R. Esmerian*, Inc., 51 F.3d 1095, 1097 (2d Cir. 1995); *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997).   Both the Supreme Court and the Second Circuit have acknowledged that Section 1782 evinces a Congressional intent to provide a liberal avenue to discovery in aid of foreign and international proceedings.  *See, e.g.*, *Intel*, 542 U.S. at 247-48; *Brandi-Dohrn*, 673 F.3d at 80 ("[T]he statute has, over the years, been given increasingly broad applicability."); *In re Edelman*, 295 F.3d 171, 179-80 (2d Cir. 2002) ("In sum, Congress has expressed as its aim that the statute be interpreted broadly . . . .").

### B.    Petitioner Satisfies The Statutory Requirements Of 28 U.S.C. § 1782.

Petitioner satisfies the three statutory requirements of Section 1782: (1) Respondents are "found" in the Southern District of New York; (2) the requested information is for use in the Contemplated Foreign Proceedings; and (3) Petitioner is an "interested person" as the putative plaintiff and complainant in those Proceedings.

### 1.    Respondents Are "Found" In The Southern District Of New York.

Respondents are headquartered in this District and thus reside or are "found" in this District for purposes of Section 1782. [64] *Hertz Corp. v. Friend*, 559 U.S. 77, 81, 93 (2010) (holding that a corporation's principal place of business "should normally be the place where the corporation maintains its headquarters"); *Matter of Fornaciari for Order to Take Discovery Pursuant to 28 U.S.C. §1782*, No. 17MC521, 2018 WL 679884, at *2 (S.D.N.Y. Jan. 29, 2018) (noting that a corporation is found in the district where it is "essentially at home"); *Australia & New Zealand Banking Grp. Ltd. v. APR Energy Holding Ltd.*, No. 17-MC-00216 (VEC), 2017 WL 3841874, at

---

[64]    Bento Decl., Exs. 3-9

*3 (S.D.N.Y. Sept. 1, 2017) ("[A] corporation is 'at home' for the purpose of constitutional due process only in a state that is the corporation's place of incorporation or its principal place of business.") (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 139 n. 19 (2014)) (emphasis added).

### 2.    The Discovery Sought Is For Use In Foreign Proceedings.

The information sought in the Subpoenas is "for use" in foreign proceedings.  In the Second Circuit, "[w]here an applicant has not yet initiated a foreign proceeding, [Section 1782] discovery is available when the materials may help the applicant either to plead or to prove the anticipated claims.  Indeed, 'the foreign proceeding need not be pending, so long as it is within reasonable contemplation.'"  *In re Mangouras*, No. 17-MC-172, 2017 WL 4990655, at *5 (S.D.N.Y. Oct. 30, 2017) (*citing Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015)); *Intel*, 542 U.S. at 259 (foreign proceeding need not have actually commenced at the time when Section 1782 discovery is sought; it need only "be within reasonable contemplation.").  Here, Petitioner will use the requested information to plead and prove its civil claims in England and Malta.[65]

Petitioner's Contemplated Foreign Proceedings qualify as "foreign proceedings" for purposes of Section 1782.  A petitioner need only "provide some objective indicium that the action is being contemplated" in order to satisfy this requirement.  *In re Kiobel,* 2017 WL 354183, *3 (S.D.N.Y. Jan 24, 2017).  Here, the declarations of Petitioner's English and Maltese lawyers establishing that they have (1) been retained to pursue the claims articulated in their declarations, (2) already sent pre-action correspondence to the foreign defendants, and (3) already begun preparing the necessary pleadings are objective evidence that Petitioner's "foreign proceeding[s]" are "within reasonable contemplation."  *See In re Hornbeam Corp.*, 722 F. App'x 7, 9-10 (2d Cir.

---

[65]   Pullicino Decl., ¶¶60, 65; Drake Decl., ¶¶30-31.

2018) (summary order) (holding that a foreign proceeding was reasonably contemplated where the applicant "represented that it intended to initiate further litigation," and "articulated a theory on which it intended to litigate"); *In re Top Matrix Holdings Ltd.*, No. 18 MISC. 465 (ER), 2020 WL 248716, at *4 (S.D.N.Y. Jan. 16, 2020) ("This Circuit has found that sworn statements attesting to petitioners' intent to litigate and describing the legal theories on which they plan to rely are sufficiently concrete to meet the statutory requirement."); *In re Furstenberg Fin. SAS*, No. 18-MC-44 (JGK), 2018 WL 3392882, at *4 (S.D.N.Y. July 12, 2018) (holding that for use requirement was met where petitioners swore that they intended to file a criminal complaint in Luxembourg Criminal Court and articulated a specific legal theory on which they intended to rely); *see also In re Application of Bracha Found.*, 663 F. App'x 755, 764 (11th Cir. 2016) (affirming district court's decision that foreign proceeding was within reasonable contemplation because "[applicants] have represented their intention to return to litigation in the BVI and have articulated a theory upon which they intend to litigate."); *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*, 613 F. App'x 319, 323 (5th Cir. 2015) (finding that the application was "for use" in a contemplated proceeding because, inter alia, Petitioner filed a "sworn affidavit" from his foreign lawyer that he had prepared papers).

Further, the Contemplated English and Maltese Proceedings qualify as proceedings in a "foreign or international tribunal" for purposes of Section 1782. Indeed, numerous courts have found that civil proceedings before English courts satisfy Section 1782's requirements. *See e.g. In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 41 (2d Cir. 2017); *La Suisse, Societe d'Assurances Sur La Vie v. Kraus*, 62 F. Supp. 3d 358, 362 (S.D.N.Y. 2014).

Petitioner is not required to show that the information sought would be discoverable or admissible in the Contemplated Foreign Proceedings. *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("[A]s a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a section 1782 application."). Rather, Petitioner only needs to show that it has "the *practical ability* . . . to place a beneficial document—or the information it contains—before a foreign tribunal." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017). Here, Petitioner plainly satisfies this requirement. The information sought in the Subpoenas is highly material to the Contemplated Foreign Proceedings because, inter alia, Petitioner needs the information to plead and prove its claims and defenses.[66]

### 3. Petitioner Is An "Interested Person."

Finally, Section 1782 requires persons seeking discovery to show that they possess a reasonable interest in the foreign proceedings. While Section 1782 broadly covers all parties with the right to participate and submit evidence in foreign proceedings, *see Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015), there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256. Petitioner will be the plaintiff in the Contemplated Proceedings and is therefore an "interested person" under Section 1782.

---

[66] Pullicino Decl. ¶¶60-61 & App'x A (explaining, including in Appendix A, how the document requests are relevant to the Contemplated Maltese Proceeding); Drake Decl. ¶¶30-31 & App'x A (explaining how document requests 1-3 are relevant to the Contemplated English Proceeding).

19

**C.      All Of The *Intel* Discretionary Factors Of Section 1782 Weigh In Favor Of Permitting The Discovery Petitioner Seeks.**

Each of the *Intel* factors weighs in favor of granting Petitioner's application.  *First*, the Respondents will not be parties to the Contemplated Foreign Proceedings.  *Second*, there is no reason to believe that English or Maltese courts would be unreceptive to evidence obtained through Section 1782 discovery.  *Third*, Petitioner is acting in good faith and is not seeking to avoid any foreign restriction on gathering evidence.  *Fourth*, Petitioner's focused document requests and request for limited testimonial evidence are carefully circumscribed and targeted to key facts so as to avoid undue burden on the Respondents.

### 1.      The First *Intel* Factor Favors Granting Discovery.

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding.  "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding  . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad."  *Intel*, 542 U.S. at 264.  Here, the Respondents will not be parties to the Contemplated Proceedings.[67]

### 2.      The Second *Intel* Factor Favors Granting Discovery.

Under the second *Intel* factor, the Court should look to whether the foreign tribunal would be receptive to evidence obtained through Section 1782.  *See In re Application of OOO Promnesftstroy*, No. M 19-99(RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct 15, 2009) (describing the second *Intel* factor as inquiring into whether the foreign proceeding would "*reject* evidence obtained with the aid of section 1782").  There is a strong presumption that foreign tribunals will

---

[67]   Drake Decl., ¶29 & Ex. 4; Pullicino Decl., ¶¶62-64.

be receptive to evidence obtained in the United States, with the Second Circuit holding that "[a]bsent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995). A court should deny discovery on the basis of lack of receptiveness only where it is provided with "*authoritative proof* that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *Id.* at 1100 (emphasis added).

The English and Maltese courts will be receptive to evidence obtained through this Application.[68] Petitioner will have the opportunity to use the information obtained in this Application in briefing its claims as well as to prove its claims and enforce any remedies.[69]

### 3.    The Third *Intel* Factor Favors Granting Discovery.

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. The *Intel* Court expressly rejected the notion that Section 1782 requires that the evidence sought must be discoverable in the foreign proceeding itself, and the Second Circuit has added that the specific documents or testimony discovered need not be admissible abroad. *See Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 82 (2d Cir. 2012) ("While *Intel* concerned the discoverability of evidence in the foreign proceeding, we see no reason why it should not extend to the admissibility of evidence in the foreign proceeding. As in *Intel*, there is no statutory basis for any admissibility requirement."); *Intel*, 542 U.S. at 261 ("A

---

[68]   Drake Decl. ¶¶32-36; Pullicino Decl. ¶66.
[69]   Drake Decl. ¶¶30-31; Pullicino Decl. ¶¶61, 65.

foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts.").  Nor is there any requirement that Petitioner must exhaust its remedies by seeking the discovery in the foreign courts first.  *See In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) ("[A] 'quasi-exhaustion requirement' finds no support in the plain language of the statute and runs counter to its express purposes.").

Here, there is no reason to believe that any of the discovery sought violates any foreign laws and/or public policy.  Petitioner does not seek customer account information, state secrets, or attorney-client communications—it merely seeks information relating to the Helios Agreements and related corporate transactions.  The English and Maltese jurisdictions do not have any law or public policy against such discovery.[70]

### 4.    The Fourth *Intel* Factor Favors Granting Discovery.

The fourth *Intel* factor looks to whether the requests are "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 265.  The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure.  "The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute." *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998).

Here, the six document requests and corresponding deposition topics are narrowly tailored, temporally limited, and directly relevant to the issues in the foreign proceedings.  Whatever burden Respondents may incur by producing the requested discovery, it is both modest and proportionate

---

[70]   Drake Decl. ¶32; Pullicino Decl. ¶¶66-68.

given the circumstances.  To the extent the Respondents have any concerns relating to confidential information, Petitioner is willing to accommodate such concerns by stipulating to an adequate protective order.  Drake Decl. ¶37-38; Pullicino Decl. ¶67; *Minatec Fin. S.A.R.L. v. SI Group Inc.*, 2008 WL 3884374, at *1 (N.D.N.Y. Aug. 18, 2008) ("[T]he beauty of § 1782 is that it permits this Court to impose a protective order that would extinguish any concern that privileged, confidential, or proprietary information would be indecorously revealed.").

## III.    CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court (a) grant the Application And Petition For An Order To Conduct Discovery; (b) enter the Proposed Order attached to the Bento Declaration as Exhibit 1, (c) authorize Petitioner, pursuant to 28 U.S.C. § 1782, to serve the Subpoenas; and (d) grant any and all other relief to Petitioner as deemed just and proper.

Dated:  New York, NY                         Respectfully submitted,
            May 5, 2021
                                                         /s/ Peter Calamari

                                                         Peter Calamari
                                                         Lucas V.M. Bento
                                                         Colin Steele
                                                         petercalamari@quinnemanuel.com
                                                         lucasbento@quinnemanuel.com
                                                         colinsteele@quinneamnuel.com
                                                         QUINN EMANUEL URQUHART &
                                                         SULLIVAN, LLP
                                                         51 MADISON AVENUE, FLOOR 22
                                                         NEW YORK, NY 10010
                                                         Telephone: (212) 849-7000
                                                         Facsimile: (212) 849-7100

                                                         *Attorneys for Petitioner*