**UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE APPLICATION OF HELIOS VENTURES FZE FOR AN ORDER TO TAKE DISCOVERY FOR USE IN FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782 | Case No. 21-MC _____ |

**DECLARATION OF ADVOCATE DOCTOR LOUIS CASSAR PULLICINO**

I, Advocate Doctor Louis Cassar Pullicino, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States, as follows:

1.      I submit this declaration in support of Helios Ventures FZE ("Petitioner")'s *Ex Parte* Application and Petition For An Order To Conduct Discovery from VisaJet US Inc. ("VistaJet US"), Rhone Capital L.L.C., and Rhône Group L.L.C. ("Rhône Group", and together with VistaJet US, the "Respondents") For Use In A Foreign Proceeding Pursuant To 28 U.S.C. § 1782 ("1782 Application").  Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the 1782 Application and accompanying Memorandum of Law.

## I.      BACKGROUND AND QUALIFICATIONS

2.      I am an advocate admitted in Malta since 1987.  I have practised law in Malta for over 30 years. I have been a partner at Ganado Advocates since 1995. I hold the degree of Doctor of Laws form the University of Malta (1986). I have appeared and continue to appear before the Superior Courts of Malta in corporate dispute cases, in particular, cases involving petitions by shareholders for unfair prejudice conduct in the running of affairs of Malta companies.

3.      A copy of my resume is attached hereto as **Exhibit LCP1.**

1

4.      Unless otherwise indicated, all facts set forth in this declaration are based upon: (a) my review of relevant documents; and (b) information supplied to me by Helios, its officers, directors, and employees, or by professionals retained by it.

5.      All exhibits attached hereto are true and accurate copies, or true and accurate excerpts of those copies as retrieved from the Malta Registrar of Companies ("RoC") or as provided to me by Helios by its officers, directors, and employees, or by professionals retained by it.  Where an exhibit is in a foreign language a certified translation is provided.

6.      Please note that capitalised terms not otherwise defined herein shall have the meanings ascribed to them in the 1782 Application and in the underlying contractual documents.

## II.      FACTUAL BACKGROUND

7.      The Petitioner, Helios Ventures FZE ("Helios"), is a Free Zone Establishment (the equivalent of a limited liability company limited by shares) registered in the Free Zone in Ajman in the United Arab Emirates. Helios is a holding company. The beneficial owner of Helios is Mr. Leonidas Loucas ("Mr. Loucas"), a Cypriot businessman. Its Director is Mr. Siyuan Wang. (**Exhibit LCP2**).

8.      There is a dispute concerning Helios' participation and shareholding in VistaJet Group Holding Limited ("VistaJet Malta"), a company involved in the business of operating private airplane charter incorporated in Malta with official number C 73543 (certificate of incorporation uploaded on the RoC as (**Exhibit LCP3**)). Upon information and belief, VistaJet Malta was the global holding entity of the "VistaJet" branded group of companies until December 6, 2018. Thomas Flohr ("Mr. Flohr") is founder and CEO of VistaJet Malta . Upon information and belief, he holds indirectly (through Vista Dubai (*defined infra*)) the majority

of VistaJet Malta´s shares. Helios is a shareholder of "Ordinary B Shares"[1] in VistaJet Malta. Mr. Flohr is a director at VistaJet Malta. Steven Langman was a director at VistaJet Malta from August 24, 2017 until December 6, 2018.

9.      Vista Global Holding Limited ("Vista Dubai") is a company incorporated in Dubai, United Arab Emirates, on August 28, 2018 according to the records of the Dubai International Financial Center (**Exhibit LCP4**). Upon information and belief, Vista Dubai is the global holding entity of the "VistaJet" branded group of companies as of December 6, 2018. Upon information and belief, Mr. Flohr and Rhône Group hold a majority stake in Vista Dubai. Mr. Flohr and Mr. Langman are directors of Vista Dubai (**Exhibit LCP4**).

10.      In 2016 Mr. Flohr and Mr. Loucas discussed the potential for Mr. Loucas to invest in VistaJet Malta  through Helios to enable VistaJet Malta to expand its business, including in the United States, which was understood to be a lucrative market for business aviation.

11.      The above negotiations culminated in the conclusion of a Subscription Agreement between Helios and VistaJet Malta of 6 February 2017 (**Exhibit LCP5**) and amended version thereof of March 29, 2017 (**Exhibit LCP6**), resulting in Helios owning Ordinary B Shares in VistaJet Malta.  Helios was issued 1,062,268 and 531,134 Ordinary B Shares (1,593,402 Ordinary B Shares in total) in VistaJet Malta upon a contribution of US$30,000,000.  Moreover a Put Option Agreement related to such B Shares was concluded on the same dates as the Subscription Agreement. Following new negotiations a Call Option Agreement was additionally concluded between Helios and Mr. Flohr . I am informed, that

---

[1] At this point in time, the share capital of VistaJet Malta included three different types of shares: Ordinary A Shares, Ordinary B Shares and Convertible Preference Shares. Ordinary A Shares and Ordinary B Shares carried substantially the same rights to receive information on VistaJet Malta, participate in shareholder meetings, receive dividends and distribution of assets on winding-up on a *pro rata* basis. Ordinary A Share carried additionally one vote per share at the general meeting and only A shares could be used as collateral for a pledge, amongst other rights.

both agreements are subject to dispute in separate proceedings in England. I understand from the information provided, that communication between VistaJet and Helios, in particular the signing of corporate documents or related agreements requiring Helios' participation as well as any related communication were usually conducted through Leona Qi, formerly in charge of the Asian market and now president of VistaJet US Inc (**Exhibit LCP7**).

12.     The manner in which VistaJet Malta executed some of the corporate actions violated Maltese corporate law, as evidenced from corporate documents available at the RoC. Such actions are therefore considered invalid under Maltese law and have consequently harmed Helios' interests in VistaJet Malta.

13.     In brief, Helios' contention is that specific corporate events have been carried out by the organs of VistaJet Malta, including the 402 Respondents (as defined below in paragraph 47) in breach of VistaJet Malta's Articles of Association (the "Articles") applicable at the relevant point in time and in breach of the provisions of the Malta Companies Act.[2] These corporate events and corresponding breaches of the Articles and/or the Companies Act are set out in detail below.

14.     **Rhône Group Amendments Resolution**. In August 2017, Rhône Group subscribed to US$150 million in redeemable preference shares of VistaJet Malta (**Exhibit LCP8**) and obtained from Mr. Flohr shares in VistaJet Malta of the same type for US$50 million based on a valuation established by the Rhône Group acquisition of shares provided by VistaJet Malta.  (**Exhibit LCP9**) ("Rhône Transactions").

15.     Specifically, an extraordinary resolution was adopted by VistaJet Malta's shareholders on 23 August 2017, (a true certified extract of this resolution as filed at the RoC on 23 August 2017 is attached as **Exhibit LCP10** ("Rhône Amendments Resolution")).

---

[2] Chapter 386 of the Laws of Malta ("Companies Act").

16.     However, Helios was never  invited  to sign nor did it sign or contribute to the Rhône  Amendments Resolution.

17.     The Rhône  Amendments Resolution provided for the increase of the authorised share capital of VistaJet Malta through the creation of 5,449,393 Redeemable Preference Shares[3] with a nominal value of US$ 2.50 each and 1,362,348 Deferred Shares[4] with a nominal value of US$ 1.099 each.

18.     The creation of these two new classes of shares was simultaneously reflected in the Memorandum and Articles of Association of VistaJet Malta by an amendment providing for new terms relating to the new share classes created.

19.     In specific terms, Helios as, a holder of Ordinary B Shares, was previously entitled to "*the right to receive dividends and distributions of assets on the winding up of the Company on a pro rata basis **with all other issued participating shares***"[5]. But with the creation of the class of "Redeemable Preference Shares" this right was varied to one where receipt of dividends/distribution would be "*on a pro rata basis **with all other issued Ordinary shares***". The "Redeemable Preference Shares" were given "priority" on such receipt of dividends/distributions against "*any other class of shares*", including Ordinary B Shares.[6]

---

[3]  Redeemable preference shares as they were issued by VistaJet Malta were shares which generally entitled the shareholder to a preference or priority ranking, over ordinary shares, when receiving dividends or distribution of assets on winding-up. These shares allowed the shareholder to vote and to nominate a director. VistaJet Malta was entitled to redeem (or rather purchase them back from a shareholder) at its discretion and subject to the consideration and terms set out by the company's memorandum and articles of association. The shareholder was at any time permitted to convert in to ordinary shares and avoid redemption.

[4] In terms of Articles 5.3 and 5.4 of VistaJet Malta's Memorandum of association in force at 23 August 2018 attached as **Exhibit LCP10** the Deferred Shares were not entitled to receive notice of, or to a vote at, the general meeting; and were not entitled to receive dividends. The owners of the Deferred Shares were only entitled, as a whole class, to US$0.01 in aggregate from the distribution of assets on winding-up and subject to the holder of the Ordinary A Shares and Ordinary B Shares having first received all amounts paid up as share capital.

[5] This in terms of Article 5.3 of VistaJet Malta's Memorandum of Association in force at 8 August 2017 attached as **Exhibit LCP11**.

[6] This is in terms of Article 5.4 of VistaJet Malta's Memorandum of Association in force at 23 August 2017 attached as **Exhibit LCP10**:

Helios was prejudiced by these corporate events since its Ordinary B Shares no longer ranked *pro rata* with all other classes of shares in the case of dividend or distribution of assets upon winding-up of VistaJet Malta.

20.     This increase in the issued share capital and variation of right of share classes was made without Helios' consent, and therefore, in violation of the Articles and the Companies Act. Article 3.2 of the Articles required Helios' approval for any variation of the rights carried by the Ordinary B Shares.[7] Article 85 of the Companies Act required Helios's consent for the increase in issued share capital, namely, Redeemable Preference Shares and Deferred Shares.[8]

21.     **Bonus Share Issue And Allotment Resolutions**. On 24 August 2017 an extraordinary resolution (a true certified extract of this resolution as filed at the RoC on 24

---

*All Ordinary shares shall carry the right to receive dividends and distributions of assets on the winding up of the Company on **a pro rata basis with all other issued Ordinary shares**.*

*The Deferred Shares confer no rights to dividend. On a return of assets in a winding-up, the holders of the Deferred Shares shall be entitled (as a class) to zero United States Dollars and one Cent (US$0.01) only in aggregate, and subject always to the holders of the Ordinary shares having first received all amounts paid up on such Ordinary shares.*

*The holders of the Redeemable Preference Shares shall be entitled to dividends and to participate in a return of capital on any liquidation, dissolution or winding-up or (other than on conversion, redemption or repurchase of shares) otherwise **in priority to any payment or distribution to the holders of any other class of shares in the manner set out in the Articles of Association**.*

[7] This is in terms of Article 3.2 of VistaJet Malta's Memorandum of Association in force at 23 August 2017 attached as **Exhibit LCP10**:

*The Company may, by an extraordinary resolution of the Company in General Meeting carried in accordance with these Articles, and, unless issued as convertible shares, **subject to the approval of a simple majority of the holders of the issued shares** of that class **and of any other class affected** thereby, authorise the conversion of any shares in the Company from one class of shares to another, or the variation of the rights attached to any class of shares in the Company, as well as authorise the removal, whether wholly or in part, of the division of the shares of the Company into several classes*

[8] Malta Companies Act, Article 85:

*(1) Any increase in the issued share capital of a company shall be decided upon by an ordinary resolution of the company, unless the memorandum or articles require a higher percentage than that required for an ordinary resolution by article 135(2):*

*[...]*

*(2) Where there are several classes of shares, any resolution referred to in sub-article     (1) shall  be subject to a separate vote for each class of shareholders whose rights are     affected by such resolution, and the provisions relating to the majority required for the resolution shall apply for each class.*

August 2017 is attached as **Exhibit LCP12** ("Bonus Shares And Allotment Resolution")) was adopted by the shareholders of VistaJet Malta which provided inter alia for the following:

(a) Capitalisation of VistaJet Malta's share premium account in the amount of US$ 3,405,870, by the issue and allotment of 1,362,348 Redeemable Preference Shares of US$ 2.50 each to Mr. Flohr, as a bonus issuance;

(b) A share buyback of 1,362,348 Ordinary A Shares owned by Mr. Flohr for the amount of US$ 50 million capitalized against the share premium account, applying the valuation established by the Rhône Group consideration provided and by depleting to a substantial part the funds added to that account by the Rhône Group consideration.

(c) The conversion of 1,362,348 Ordinary A shares of US$ 1.099 each held by Mr. Flohr to 1,362,348 deferred Shares of US$ 1.099 each;

(d) The issuance and allotment of 2,535,365 Redeemable Preference Shares of US$ 2.50 each and a premium value of US$ 34.20 to Turbo Holdings LP and 1,551,680 redeemable Preference Shares, of a nominal value of US$ 2.50 each and a premium value of US$ 34.20 to Turbo Offshore Holdings LP (Turbo Holdings LP and Turbo Offshore Holdings LP are collectively referred to as the "Turbo Entities").  The Turbo Entities are owned and controlled by Rhône Group, as is apparent from the financial contribution overview.

22.     Mr. Flohr subsequently transferred the 1,362,348 Redeemable Preference Shares, allotted to him as "bonus shares", to the Turbo Entities with effect from 24 August 2017 (notice of transfer of shares (Form T) as filed at the RoC on 25 August 2017 is attached as **Exhibit LCP9**).

23.     Mr. Langman, Managing Director and Co-Founder of Rhône Group, was appointed as director of VistaJet Malta with effect from 24 August 2017 (notification of changes among directors (Form K) as filed at the RoC on 25 August 2017 is attached as **Exhibit LCP13**).

24.     It is noteworthy that in order to obtain the Redeemable Preference Shares, which Mr. Flohr transferred to the Turbo Entities, VistaJet Malta carried out a share buyback of an equal number of Ordinary A Shares from Mr. Flohr. In order to carry out such buyback VistaJet Malta first booked the consideration amount paid by the Turbo Entities on its share premium account. Then VistaJet Malta <u>immediately</u> depleted such account to grant "bonus shares" to Mr. Flohr personally as consideration for the buyback. To calculate the value of this buyback VistaJet Malta used the valuation newly established by the Rhône Transactions.

25.     This sequence of actions led to the result that Mr. Flohr obtained Redeemable Preference Shares worth US$ 50,000,000 and some undisclosed consideration from the Turbo Entities for the transfer of those shares issued as bonus shares to him. The Turbo Entities obtained Redeemable Preference Shares worth US$ 200,000,000. VistaJet Malta obtained only US$ 100,000,000 in capital added to its share premium account. On the other side VistaJet Malta also acquired a potential liability in form of a conditional obligation of US$ 200,000,000 + 9% p.a. interest, if VistaJet Malta would exercise its redemption right to force Turbo Entities out of their shareholder position by way of redemption of the Redeemable Preference Shares.

26.     **Extraordinary General Meeting of 16 October 2018**.    During the extraordinary shareholders meeting of October 16, 2018 the following resolutions (true certified extract of the minutes of the extraordinary general meeting filed at the RoC on 17 October 2018 is attached as **Exhibit LCP14**) were adopted:

(a) An increase in the authorised share capital, reflecting an increase of 71,092,064 to 77,335,079 ordinary A Shares;

(b) An authorisation to the Board to issue shares up to the maximum authorised ordinary A shares of VistaJet Malta, at a premium or otherwise, for a maximum period of 5 years.

(c) An amendment to the Memorandum and Articles of Association, stated as being to 'align' Article 9 of the Articles of Association with clause 5.7 of the Memorandum of Association and Article 6.5 of the Articles of Association and the relevant provision of the Shareholders' Agreement.

27.     In accordance with Article 85(2) of the Companies Act, the approval of an authorisation as described in paragraph 26(b) could not be validly carried out without the approval of a required majority of each class of shareholders whose rights were affected.

28.     The amendments made to Articles 9.1 and 9.6 concerned *inter alia* the Ordinary B Shares and clearly affected the rights of Helios whose Ordinary B Shares have been unnecessarily burdened with a wider "right of first refusal" in favour of Mr. Flohr.

29.     Helios was the majority holder of Ordinary B Shares at that time. It did not however receive an invitation to attend the Extraordinary General Meeting in violation of Maltese law and correspondingly was deprived of the possibility to vote on that Extraordinary General Meeting.

30.     **Redemption of Preference Shares**. On 6 December 2018,  5,449,393 Redeemable Preference Shares held by the Turbo Entities were allegedly "redeemed" in the manner contemplated by the Memorandum and Articles of Association and by way of a series of transactions. These transactions were described in a letter from VistaJet Malta to the Registrar of Companies dated 20 March 2019 (**<u>Exhibit LCP15</u>**). However, the provisions of

the Memorandum and Articles of Association quoted do not permit the "redemption" of the Redeemable Preference Shares as described in that letter, as shall be explained below.

31.     On review of the documentation **Exhibit LCP15** and **Exhibit LCP16**, it becomes apparent that whilst the process described in that explanatory letter to the Registrar of Companies is referred to as a 'conversion' by the Memorandum of Association,[9] it was carried out as a redemption, without apparent legal basis under Maltese law.

32.     In accordance with the Memorandum and Articles of Association, only VistaJet Malta, the company itself, had the right to redeem the redeemable Preference Shares for the amount of US\$ 200.000.000 plus 9% interest and not the Turbo Entities.[10]  The Turbo Entities only had the rights to convert the Redeemable Preference Shares into Ordinary A Shares.  Both the Memorandum and Articles of Association provide that the holder of the Redeemable Preference Shares has a right to serve a Conversion Notice on VistaJet Malta by which the redemption right of VistaJet Malta shall no longer apply.[11]

33.     The redemption carried out according to the letter from VistaJet Malta to the Registrar of Companies dated 20 March 2019 (**Exhibit LCP15**) suggests that a redemption was carried out by the Turbo Entities, who were not entitled to do so. Such redemption, while not permissible as such, was also carried out for the share par value, which did not constitute the redemption consideration set out in the Articles.

34.     **Transfer of Ordinary A Shares by Mr. Flohr and Turbo Entities to a newly created company called Vista Global Holdings Ltd ("Vista Dubai")  and Acquisition of XOJet (US business) by Vista Dubai**.

---

[9] See Article 5.9 of VistaJet Malta's Memorandum and Article 6.8 of VistaJet Malta's Articles (**Exhibit LCP14**).

[10] Article 5.10 of VistaJet Malta's Memorandum and Article 6.9 of VistaJet Malta's Articles (**Exhibit LCP14**).

[11] *Id.*

35.     In or around November and December 6, 2018, Mr. Flohr and the Turbo Entities, as the majority shareholders in VistaJet Malta, transferred all of their Ordinary A Shares—which carry the right to vote—to Vista Dubai, a newly created company. Neither Helios nor the other shareholder in VistaJet Malta, Volcan Investments Limited, were invited to join as shareholders of Vista Dubai. As shall be explained below, Mr. Flohr and Rhône (through the Turbo Entities) diverted a corporate opportunity to substantially increase the value of VistaJet Malta, the acquisition of XOJet (a US focused private jet business) (**Exhibit LCP17**) to Vista Dubai— contrary to the best interests of VistaJet Malta and maximisation of shareholder value, including Helios's.

36.     With effect from 6 November 2018, Mr. Flohr transferred all his 64,046,562 Ordinary A shares to TF Holding LTD (notice of transfer of shares (Form T) as filed at the RoC) on 22 November 2018 is attached as **Exhibit LCP18)**. TF Holding Ltd. is a Dubai company held entirely by Mr. Flohr, as stated in the attached reference on the website of the Dubai International Financial Centre, attached as **Exhibit LCP22**.[12] TF Holding LTD transferred the entire stake on the same day to Vista Dubai (notice of transfer of shares (Form T) as filed at the RoC on 22 November 2018 is attached as **Exhibit LCP19**).

37.     With effect from 6 December 2018, Turbo Entities transferred all their 6,092,159 Ordinary A shares - issued on that same day (based on the powers to issue A shares granted to the board of directors by the October 16, 2018 extraordinary general meeting (para. 26)) to Vista Dubai (notice of transfer of shares (Form T) as filed at the RoC on 8 April 2019 is attached as **Exhibit LCP20**).

38.     On 6 December 2018 Vista Dubai became the majority shareholder of VistaJet Malta, while Michael Steven Langman ("Mr. Langman"), managing director and founder at

---

[12] Whilst Mr. Flohr did not in effect transfer his Deferred Shares, such shares are not entitled to any dividends nor proceeds on liquidation and do not carry the right to vote.

Rhône Group, left the board of directors of VistaJet Malta (notice of changes among directors (Form K) filed at the RoC on 10 December 2018 is attached as **Exhibit LCP21**) and is now on the the board of directors of Vista Dubai (**Exhibit LCP4**).

39.     Helios (which holds 1,593,402 Ordinary B Shares) and Volcan Investments Limited (which holds 132,254 Ordinary B Shares) were the only participating shareholders who were not in the position to transfer their shares to Vista Dubai.[13]

40.     Based on information in the public domain, in September 2018 Vista Dubai acquired a stake in XOJet, which is a profitable US focused private jet business Vista Dubai acquired XOJet shortly after being incorporated in Dubai as is set out in the article **Exhibit LCP17**.

41.     Mr. Flohr was (and still is) a director of VistaJet Malta during the entire year of 2018. Turbo Entities had their nominated director Mr. Langman on the board of VistaJet Malta until 6 December 2018 (notification of changes among directors (Form K) as filed at the RoC on 10 December 2018 is attached as **Exhibit LCP21**).

42.     Helios was not offered to participate in Vista Dubai or in the acquisition of XOJet.

43.     The diversion of this business opportunity by the directors of VistaJet Malta to Vista Dubai constitutes a breach of their fiduciary duties to act in good faith and in the best interests of VistaJet Malta.  Moreover the diversion of this business opportunity runs counter to the expectation which Mr. Flohr outlined to Helios' beneficial owner, Mr. Loucas,  during the early negotiation to support the case for the entry into the Subscription Agreement (**Exhibit LCP23**).

---

[13] Whilst Mr. Flohr did not in effect transfer his Deferred Shares, such shares are not entitled to any dividends nor proceeds on liquidation and do not carry the right to vote.

44.     This constitutes a breach of Articles 136A (General Duties of Directors), 143 (Directors Competing with the Company) and 147 (Duty of Director to Disclose Interest in a Contract with the Company) of the Companies Act by the directors of VistaJet Malta at the time, at least, by Mr. Flohr and Mr. Langman.

45.     Helios has as a result of the above actions been prejudiced and deprived of the opportunity to enhance the value of its Ordinary B Share stake in VistaJet Malta.

46.     In conclusion, by the above corporate events, Helios's rights as holder of Ordinary B Shares in VistaJet Malta were materially affected and unfairly prejudiced—the rights attached to Ordinary B Shares were varied without its consent and VistaJet Malta was illegally deprived of a corporate opportunity.

## III.     FOREIGN PROCEEDINGS

47.     **The Claim on the Merits**. The Petitioner anticipates commencing judicial proceedings before the Civil Court (Commercial Section) of Malta  (the "Court") against VistaJet Malta, its directors, namely Mr. Flohr, Mr. Langman and Mr. Nicholas van der Meer and Vista Dubai (the "Art. 402 Respondents") for unfair prejudice in terms of article 402(1) of the Companies Act ("Malta Proceeding").[14]  The scope and objective of this remedy is to provide recourse to aggrieved shareholders which is flexible and able to address grievances in a just and equitable manner.

48.     The Petitioner will be claiming that the Art. 402 Respondents, or any one of them, has conducted the affairs of VistaJet Malta, or has otherwise acted, in a way which

---

[14] Malta Companies Act, Article 402(1) provides:

*Any member of a company who complains that the affairs of the company have been or are being or are likely to be conducted in a manner that is, or that any act or omission of the company have been or are or are likely to be, oppressive, unfairly discriminatory against, or unfairly prejudicial, to a member or members or in a manner that is contrary to the interests of the members as a whole, may make an application to the court for an order under this article.*

constitutes Unfair Prejudice with respect to the Petitioner's interests as a shareholder of VistaJet Malta, *inter alia* ("Maltese Claims"):

(a) by diverting a corporate opportunity, being the acquisition of XOJet and related corporate events (para. 34 above), from VistaJet Malta to Vista Dubai in breach of the provisions of the Companies Act *inter alia* (i) the fiduciary obligations owed by the directors, in particular, Mr. Flohr and Mr. Langman, to act in the best interests of VistaJet Malta (including the avoidance of conflicts of interest); (ii) the prohibition for such directors to compete with the company on whose board they sit; and (iii) the requirement of such directors to disclose interests in transactions being contemplated by a company on whose board they sit.

(b) by flouting the rules of VistaJet Malta's Memorandum and Articles  and the provisions of the Companies Act, in particular, in the corporate events described above.

49.    **The Remedies**. The Petitioner intends to seek remedies which are available in accordance with article 402(3) of the Companies Act in order to redress the Unfair Prejudice raised in the Malta Claims.[15] Malta Courts enjoy a wide discretion in the type of remedy that it can afford the Petitioner.

---

[15] Malta Companies Act, Article 402(3) provides:

*If on an application made in terms of sub-article (1) or (2), the court is of the opinion that the complaint is well-founded and that it is just and equitable to do so, the court may make such order under such terms as it thinks fit –*

*(a) regulating the conduct of the company's affairs in the future; or*

*(b) restricting or forbidding the carrying out of any proposed act; or*

*(c) requiring the company to do an act which the applicant has complained it has omitted to do; or*

*(d) providing for the purchase of the shares of any members of the company by other members of the company or by the company itself and, in the case of a purchase by the company, for the reduction accordingly of the company's issued share capital; or*

50.   The Petitioner intends to pursue *inter alia* the following remedies:

(a)   Compensatory relief in favour of Helios against the 402 Respondents as the Court may deem just and equitable in the circumstances, in terms of Article 402(3)(f) of the Companies Act arising from the diversion of corporate opportunity (i.e. the acquisition of XOjet) and the unlawful and/or unjust enrichment made therefrom.

(b)   Order the regulation of the conduct of VistaJet Malta's affairs in the future in terms of Article 402(3)(a) of the Companies Act *inter alia* by ordering (i) the removal of the current board of directors, including, Mr. Flohr; (ii) the appointment of a new independent and technically competent board of directors; and (iii) the reorganisation of the capital structure of VistaJet Malta to reverse the effects of the corporate events complained in paragraph 48(b) above.

(c)   order the purchase of Helios's shares in VistaJet Malta by Mr. Flohr or by VistaJet Malta itself (by way of a share buy-back) and, in the case of a purchase by VistaJet Malta, for the reduction accordingly of its issued share capital in terms of Article 402(3)(d) of the Companies Act and which purchase must not only extend to the full economic value of VistaJet Malta, but also that Vista Dubai in view of the deprived corporate opportunity complained of in paragraph 48(a).

---

*(e) directing the company to institute, defend, continue or discontinue court proceedings, or authorising a member or members of the company to institute, defend, continue or discontinue court proceedings in the name and on behalf of the company; or*

*(f) providing for the payment of compensation by such person as may have been found by the court responsible for loss or damage suffered as a result of the act or omission complained of, to the person suffering the said loss or damage; or*

*(g) dissolving the company and providing for its consequential winding up.*

51.     In my view, the Petitioner has a good arguable case that the affairs of VistaJet Malta have been conducted in a manner that is oppressive, unfairly discriminatory or unfairly prejudicial to Helios and/or in a manner which is contrary to the interests of VistaJet Malta as a whole. To this end, our law firm has commenced drafting the pleadings for the Maltese Claims.

52.     **Malta Procedure**. The Civil Court (Commercial Section) (the "Court") is assigned, amongst other matters, applications which relate to matters regulated by the Companies Act.[16] Judicial proceedings are initiated in Malta by filing an application (substantially in the form of a statement of claim) which would contain a brief statement on: (i) the relevant facts of the case and (ii) the cause / juridical basis of the claim and also the relief sought. This application is analogous to a "complaint" in US proceedings. In the ordinary course, following an initial case management decree delivered in chamber, the application is served on the respondents who would be required to file a reply (substantially in the form of a statement of defence) within 20 days from such service.

53.     Parties are free to introduce testimonial evidence from persons who are willing to provide such evidence. In civil and commercial matters, such evidence is generally introduced in the form of a witness statement. The parties will be able to cross-examine the witness on their witness statements during the course of the judicial proceedings.  There is no mechanism to take a deposition in a Maltese case though there is nothing prohibiting a party to introduce evidence obtained from a US deposition, such as the deposition transcript, in a Maltese case.

54.     Parties are free to produce documentary evidence. In civil and commercial matters, there is no duty of full and frank disclosure on the parties and there is no framework

---

[16] Civil Courts (Establishment of Sections) Order (Subsidiary Legislation 12.19 of the Laws of Malta), Regulation 5A.

for discovery applications or procedures. A party may request for the disclosure of documents in the possession of the counter-party or third parties in very limited instances, for example, a party may ask for the disclosure of certain documents during the testimony of a witness, whether in examination-in-chief or in cross-examination.

55.     A trial of commercial claims of this nature would normally be before a single judge with no jury. The judge is an independent arbiter unconnected to the parties and must be impartial and free of bias.

56.     The trial starts with a case management decree delivered in chamber which would direct the respondents to be served with the application and to reply within 20 days and which would set a first court sitting to ensure that the application was served on the respondent and then to provide directions on trial management. If any of the respondents are not yet served with the application, then the trial is adjourned to another date to verify service on the respondents. Assuming that all respondents are served and that any replies have been filed, the court will direct the parties to deal with any preliminary pleas first or with the merits of the case. The "trial" is heard on the basis of a number of court sittings scheduled approximately every 30 to 50 days and during these court sittings are generally designated for parties to bring their evidence (whether testimonial or documentary).

57.     Following the conclusion of the claimant's evidentiary process, the respondents will be entitled to cross-examine any witnesses and to produce any testimonial or documentary evidence. Once the evidentiary process of all parties is concluded, the parties will be entitled to deliver written and verbal legal submissions on the case before the court proceeds to deliver its final and definitive judgment.

58.     It would be reasonable to anticipate that it may take up to 24 to 36 months from the filing of the application to a final and definitive judgment by the Civil Court (Commercial Section).

59.     There is no right of appeal from the judgment delivered by the Civil Court (Commercial Court) in terms of article 402 of the Companies Act.

## IV.     JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

60.     The Petitioner is seeking documents and witness evidence from the Respondents as further set out in the [Proposed Subpoenas]. This information is necessary and vital for the Malta Proceedings in that they will assist in establishing facts that would be relevant to, inter alia, to further substantiate the conduct complained of in paragraphs 48(a) and 48(b) and to further advance the case as to why the relief demanded in paragraph 50 are just and equitable in the circumstances.  *See also* Appendix A.

61.     In this respect, while not 402 Respondents to the Malta Proceedings, the Respondents in the 1782 Application appear to be connected to all of the 402 Respondents and the Malta Proceedings. By way of summary:

(a)  I understand VistaJet Malta US is a US affiliate of VistaJet Malta and it appears to possess relevant information about VistaJet Malta's business operations and plans in the US, which the Petitioner claims were the purported basis of the acquisition of shares by the Petitioner and which are evidence that the corporate opportunity, relating to the acquisition of XOjet, belonged to VistaJet Malta but was diverted unfairly and unlawfully to Vista Dubai.

(b)  Rhône Group is reported to be the party that dealt with Mr. Flohr and negotiated its shareholding in 2017 (**Exhibit LCP24** and **Exhibit LCP25**) and Rhône Group appears to be party owning or otherwise controlling the Turbo Entities—one of which, Turbo Holdings L.P. appears to be one of

the shareholders of Vista Dubai. Further, Mr. Langman, Rhône Group's Managing Director and Co-Founder (**Exhibit LCP26**), is one of the 402 Respondents in view of his role as a director of VistaJet Malta and is on the board of Vista Dubai (**Exhibit LCP4**). Rhône Group would be likely to possess relevant information regarding (i) the rationale for its purchase and acquisition of newly issued VistaJet Malta shares, the business plan of VistaJet Malta (including any plans to penetrate the US market), the overall structure of that transaction, including the plans for the use of funds, subsequent restructurings of VistaJet Malta and Mr. Flohr's purported representations regarding the effect of Rhône Group's Transactions on the rights and obligations of Helios and Mr. Flohr; and (ii) the rationale for the acquisition of XOjet through Vista Dubai rather than VistaJet Malta, the overall structure of that transactions, and the board of directors' deliberations on the effect of these transactions on the rights and obligations of Helios.

62.     To be clear, it is not anticipated that the Respondents in the 1782 Application will be parties in the Malta Proceedings.

63.     Further, to the best of my understanding, neither of the Respondents in the 1782 Application are present in Malta, nor does Helios currently have a reason or ground to join them as necessary and proper parties to the Malta Proceedings.

64.     It follows that the Maltese Court would not be in a position to make an order to compel documentary disclosure and provision of testimonial evidence in the form sought in the 1782 Application from the Respondents in the course of the Malta Proceedings.

65.     Pursuant to Maltese law, Petitioner will have the opportunity to introduce the evidence obtained pursuant to this 1782 Application until the evidentiary process of the

claimant during the trial remains open and this may be around up to 9 months from the institution of judicial proceedings in Malta.

## V.     MALTESE COURT'S RECEPTIVENESS TO SECTION 1782 APPLICATION AND NON-CIRCUMVENTION OF MALTESE PROOF-GATHERING POLICIES

66.     I have no reason to believe that the Maltese courts would not be receptive to the judicial assistance requested in the 1782 Application, and the request does not seek to circumvent foreign proof-gathering restrictions or other policies of Malta. Indeed, it is my opinion that Maltese courts will be receptive of the evidence requested here as the evidence is relevant to the Malta Claims. To be clear, there is no restriction or prohibition under Maltese law for collecting and using the type of discovery that is sought here.

## VI.     ACCESS TO COURT RECORDS

67.     Petitioner will make every reasonable effort under Maltese law to keep information provided by the Respondents pursuant to this Section 1782 Application and designated as confidential by the US courts confidential in the Maltese Litigation.

68.     Under Maltese law, there is a principle of open justice and the public has a general right of access to court files.  Likewise, hearings in Maltese courts will generally be open to the public. A party may request that a document which contains confidential or commercially sensitive information is sealed (physically in a sealed envelope part of the court file) and accessible only to the parties to the Maltese Litigation. These requests are determined on a case by case basis by the presiding judge and in his or her sole discretion.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the

United States that the foregoing is true and correct.

Executed on May 3, 2021
in Valletta, Malta

_____
Advocate Doctor Louis Cassar Pullicino

## APPENDIX A
## BACKGROUND TO AND RELEVANCE OF DOCUMENT REQUESTS[17]

| No. | Request | Background | Relevance[18] |
|---|---|---|---|
| 1. | All Documents and Communications relating to the Subscription Agreement, including Documents and Communications among Mr. Flohr, VistaJet Malta, and Helios. | Helios negotiated with VistaJet Malta and the majority shareholder and Founder Mr. Flohr the Subscription Agreement. | The documents and communication relating to the Subscription Agreement, including any amendments thereto, are highly material to the Maltese Litigation as they relate to Helios's subscription into VistaJet Malta and the conditions thereto, including, an anti-dilution right in favour of Helios and a condition imposed on Helios not to "*engage in or be affiliated to any other company or organization [...] otherwise involved in business activity that is in direct or indirect competition with VistaJet*". |
| 2. | All Documents and Communications relating to the Rhône Transactions, including Documents and Communications relating to:<br><br>a.   the negotiation of the Rhône Transactions among Rhône Group, VistaJet Malta, and Mr. Flohr;<br><br>b.   the agreements among VistaJet Malta, Mr. Flohr, and Rhône Group to effect the Rhone Transactions, including:<br><br>-   The Subscription Agreement between Rhône Group and VistaJet Malta;<br><br>-   the Share Purchase Agreement between | Rhône Group obtained Redeemable Preference Shares in VistaJet Malta for the Consideration of US$ 150 million on August 24, 2017. On the same day, Rhône Group obtained from Mr. Flohr Shares in VistaJet Malta of the same type in the value of US$ 50 million.<br><br>Mr. Flohr refers to this transactions as the one activating the Mandatory Trigger mechanism. | Any such Documents and Communications are highly material to the Maltese Litigation as they relate to the sequence of corporate actions at VistaJet Malta which: (i) are in breach of the provisions of VistaJet Malta's Articles of Association and the provisions of the Malta Companies Act; and (ii) led to the Rhône Transactions and eventually to the diversion of the corporate opportunity (i.e. acquisition of XOJet) from VistaJet Malta to Vista Dubai.<br><br>The Documents relating to VistaJet Malta in Helios' possession (and referred to in the Declaration) at this stage are "true certified extracts" of such resolutions and/or minutes of the general meeting. These extracts are what would have been filed |

---

[17]   Capitalized terms used but not defined herein shall have the meanings ascribed to them in Petitioner's Application and accompanying memorandum of law.

[18]   This document is intended to aid the Court in its review of the Subpoenas. The explanations proffered herein are not exhaustive, and Petitioner reserves the right to identify additional bases on which the documents sought are relevant to the foreign proceeding.

| | | | |
|---|---|---|---|
| | the Rhône Group  and Mr. Flohr;<br><br>- the Shareholders Agreement among the Turbo Entities, VistaJet Malta, and Mr. Flohr;<br><br>- the Management Rights Agreement among the Turbo Entities, VistaJet Malta, and Mr. Flohr.<br><br>c.  the resolution of August 23, 2017 amending the articles of association of VistaJet Malta;<br><br>d.  the resolutions of August 24, 2017  providing for a share buyback from Mr. Flohr by VistaJet Malta, a bonus share issue to Mr. Flohr, and allotment of shares to the Turbo Entities. | | with the Malta Registrar of Companies and would be generated by VistaJet Malta's company secretary. These extracts would not indicate who was present for a general meeting or who executed/signed the resolution. Therefore, and since one of Helios's main contentions for the Unfair Prejudice conduct is the failure to seek its consent in writing on such actions, the production of the originals, or copies thereof, is material to its case.<br><br>Documents and Communications related to the actions carried out as directors by Mr Flohr and Mr. Langman show the extent to which directors acted in breach of their fiduciary obligations owed to VistaJet Malta, and other provisions of the law referred to in the Declaration, when the acquisition of XOJet was procured through Vista Dubai rather than through VistaJet Malta. |
| 3. | All Documents and Communications relating to the resolutions made by the shareholders or the board of directors of VistaJet Malta while Mr. Langman acted as director from August 24, 2017 until December 6, 2018, that relate  to the resolutions and corporate actions concerning:<br><br>a.  VistaJet Malta's Extraordinary General Meeting of October 16, 2018;<br><br>b.  corporate transactions involving Mr. Flohr and the Turbo Entities dated December 6, 2018. | Between August 2017 and December 2018 several corporate actions were carried out by VistaJet Malta that are referred to in the Maltese Declaration and violate the rights of Helios. Amongst other members Steven Langman was director at VistaJet Malta from August 24, 2017 to December 6, 2018.<br><br>On December 6, 2018 VistaJet Malta became a subsidiary of Vista Dubai following a transfer of shares to Vista Dubai. | Any such Documents and Communications are highly material to the Maltese Litigation in particular because they relate to the sequence of corporate actions at VistaJet Malta which: (i) are in breach of the provisions of VistaJet Malta's Articles of Association and the provisions of the Malta Companies Act; (ii) allow to identify the respective persons conducting such corporate actions in breach and (iii) allow to assess the actions that led to the diversion of the corporate opportunity (i.e. acquisition of XOJet) from VistaJet Malta to Vista Dubai.<br><br>The Documents relating to VistaJet Malta in Helios's possession (and referred to in the Declaration) at this stage are "true certified extracts" of such resolutions and/or |

| | | | |
|---|---|---|---|
| | | | minutes of the general meeting. These extracts are what would have been filed with the Malta Registrar of Companies and would be generated by VistaJet Malta's company secretary. These extracts would not indicate who was present for a general meeting or who executed/signed the resolution. Therefore, and since one of Helios's main contentions for the Unfair Prejudice conduct is the failure to seek its consent in writing on such actions, the production of the originals, or copied thereof, is material to its case.<br><br>Documents and Communications related to the actions carried out as directors by Mr Flohr and Mr. Langman show the extent, to which directors acted in breach of their fiduciary obligations owed to VistaJet Malta, and other provisions of the law referred to in the Declaration, when the acquisition of XOJet was procured through Vista Dubai rather than through VistaJet Malta. |
| 4. | All Documents and Communications relating to the restructuring resulting in VistaJet Malta becoming a subsidiary of Vista Dubai, including the register of members, register of directors, minutes and resolutions of Vista Dubai from August 28, 2018 until present. | The restructuring of the Vista group of companies let to the diversion of further value creation within the group, especially the development of the US market to Vista Dubai, allowing for Rhône Group to participate in such development by way of its shareholding in Vista Dubai. | Any such Documents and Communications are highly material to the Maltese Litigation in particular because, Mr Flohr and Mr. Langman, acted in breach of their fiduciary obligations owed to VistaJet Malta, and other provisions of the law referred to in the Declaration, when the acquisition of XOJet was procured through Vista Dubai rather than through VistaJet Malta. |
| 5. | All Documents and Communications relating to Vista Dubai's development of the US market in 2017 and 2018 in particular concerning the acquisition of XOjet, including any feasibility studies and due diligence in connection with such acquisition. | In September 2018 Vista Dubai is reported to have purchased XOJet and thereby substantially enlarged the presence of the Vista Group of companies on the US market. | Any such Documents and Communications are highly material to the Maltese Litigation as they relate to Helios's claim that the 402 Respondents, in particular, Mr Flohr and Mr. Langman, acted in breach of their fiduciary |

| | | | |
|---|---|---|---|
| | | | obligations owed to VistaJet Malta, and other provisions of the law referred to in the Declaration, when the acquisition of XOJet was procured through Vista Dubai rather than through VistaJet Malta. We understand that the acquisition of XOJet permitted Vista Dubai to penetrate the US Market. |